NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230875-U

NO. 4-23-0875

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| MARK O., | ) | Adams County |
|     Petitioner-Appellee, | ) | No. 19D41 |
|     and | ) | |
| LANA O., | ) | Honorable |
|     Respondent-Appellant. | ) | Holly J. Henze, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Doherty and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the circuit court did not err when it modified the allocation of parental decision-making responsibilities because more than two years had passed since the original order was entered.

¶ 2    Respondent, Lana O., appeals the circuit court's August 30, 2023, order awarding petitioner, Mark O., sole parental decision-making responsibilities. On appeal, Lana argues the circuit court erred when it modified the order within two years without making the proper findings pursuant to section 610.5(a) of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/610.5(a) (West 2022). We affirm.

¶ 3                        I. BACKGROUND

¶ 4    The parties were married in September 2004. They had two children: M.O. (born May 2005) and J.O. (born April 2008). Mark filed a petition for dissolution of marriage in March 2019. On January 30, 2020, the circuit court entered a judgment for dissolution of marriage. The

court's order allocated to both parties joint decision-making responsibilities for the children. The court ordered a parenting plan that awarded Lana with a majority of the parenting time. The plan specifically laid out the time for both parties for each day of the week and included a time and location for exchanging the children.

¶ 5        In April 2020, Mark filed a petition for indirect civil contempt, alleging Lana had (1) failed to meet at the designated exchange location in a timely fashion, (2) unilaterally canceled visits, (3) precluded Mark from exercising his parenting time, and (4) rescheduled Mark's parenting time without consulting him. In October 2020, the circuit court entered an order adopting the parties' agreement regarding parenting time. Aside from the agreed modified parenting time, the original order remained in effect and no changes were made to the parental decision-making responsibilities.

¶ 6        In April 2021, Mark filed another petition for indirect civil contempt, repeating many of the allegations from his April 2020 petition. On October 12, 2021, following a hearing, the circuit court found Lana in contempt of court for interfering with Mark's parenting time. The court's order consisted of purge conditions, the imposition of sanctions for Lana, and directives that she comply with the previous orders, provide make-up parenting time for Mark, and pay Mark's remaining attorney fees for the cost of bringing the petition. No changes were made to the allocation of parental decision-making responsibilities.

¶ 7        In August 2022, Mark filed another petition for indirect civil contempt, alleging Lana had failed to comply with the circuit court's prior orders, including the purge conditions. On November 10, 2022, the court entered an agreed order resolving the issues. The court's order again found Lana in contempt of court. The order also admonished Lana that further interference with Mark's parenting could result in Mark being awarded sole parental decision-making

responsibilities. The order created new purge conditions for Lana, modified the parenting plan to permit more parenting time for Mark, and removed M.O. from the parenting plan altogether. No changes were made to the allocation of parental decision-making responsibilities.

¶ 8　　　　　On June 14, 2023, Mark filed yet another petition for indirect civil contempt, alleging Lana was failing to comply with previous purge conditions and interfering with Mark's parenting time of J.O. Mark sought full parental decision-making responsibilities and argued Lana's conduct seriously endangered J.O.'s mental, moral, and physical health.

¶ 9　　　　　On August 30, 2023, following a hearing, the circuit court found Lana in contempt of court. The court's written order stated:

> "Lana remains unwilling to communicate at even a basic level with Mark. Communication is the crux of joint decision making. As such, the court finds on a preponderance of the evidence that it is in JO's best interests that parental decision making be modified. Mark shall be granted sole decision making as to education, extra-curricular activities, and religion. With regard to medical, Mark shall advise and discuss all appointments, treatments, recommendations, etc., with Lana but the final decisions shall be made by Mark."

¶ 10　　　　The circuit court cited *In re Marriage of Wendy L.D.*, 2017 IL App (1st) 160098, as authority to modify the decision-making responsibilities. The court wrote:

> "Prior amendments to a parenting plan that make no material changes to an original parenting plan (entered into more than two years prior) as to decision making and parenting time do not toll the two year requirement.
>
> Lana and Mark entered into an agreed Parenting Plan on January 30, 2020. There have been subsequent modifications, most recently by an agreed Order

entered on November 10, 2022 and an Amended Updated Parenting Plan entered on November 17, 2022, none of which served to modify major decision making or the original parenting time schedule.

A modification of decision making is necessary to serve JO's best interests to avoid the constant conflict between Lana and Mark. Lana was admonished by the court and memorialized in the Order dated November 10, 2022 that if she continued to interfere with Mark's parenting time the court would consider such a modification. The court anticipated that this admonishment would serve as a clear warning to Lana, and the court did not anticipate that Lana would be unable or would refuse to change her past behaviors. Pursuant to 750 ILCS 5/610.5(c), a court may modify an allocation of decision making if unanticipated facts have arisen since the entry of the existing parenting plan are necessary to serve a child's best interests."

The order further established a new parenting schedule and purge conditions for Lana.

¶ 11        This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13        We must first address the delay in the issuance of this order. As a matter involving the allocation of parental responsibilities, this case is subject to expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), which requires the appellate court to issue its decision within 150 days after the filing of a notice of appeal, except for good cause shown. Here, the notice of appeal was filed on September 22, 2023, making our decision due by February 20, 2024. Although every effort was made to comply with the deadline under

Rule 311(a)(5), due to several requests for an extension of time filed by counsel, we find good cause exists for filing this decision beyond the deadline.

¶ 14     On appeal, both parties agree the standard of review is *de novo* because the issue involves the statutory interpretation of section 610.5(a) of the Act. 750 ILCS 5/610.5(a) (West 2022). Section 610.5(a) states:

> "Unless by stipulation of the parties or except as provided in Section 603.10 of this Act, no motion to modify an order allocating parental decision-making responsibilities, not including parenting time, may be made earlier than two years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his or her mental, moral, or physical health or significantly impair the child's emotional development. Parenting time may be modified at any time, without a showing of serious endangerment, upon a showing of changed circumstances that necessitates modification to serve the best interests of the child." *Id.*

¶ 15     "The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature." *People v. Clark*, 2019 IL 122891, ¶ 18. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* ¶ 20. Accordingly, "[e]ach word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Id.*

¶ 16     On appeal, Lana argues the circuit court erred when it modified the parties' parental decision-making responsibilities within two years without making the proper findings pursuant to section 610.5(a) of the Act. 750 ILCS 5/610.5(a) (West 2022). Specifically, Lana contends the Act required Mark to plead and the court to find that J.O.'s present environment

seriously endangered his health or development. She further argues the prior amendments to the parenting plan were considered "substantial changes," which were also required to be pled. Because these requirements were not satisfied, the court erred by modifying the parties' decision-making responsibilities.

¶ 17　　　　Mark contends the circuit court was not required to make a serious endangerment finding regarding J.O. because more than two years had passed since the original allocation of parental decision-making responsibilities. We agree. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (noting the appellant "bears the burden of persuasion as to [his or her] claims of error").

¶ 18　　　　The circuit court's original allocation of joint parental decision-making responsibilities occurred on January 30, 2020. The operative language from section 610.5(a) states "no motion to modify an order allocating parental decision-making responsibilities, not including parenting time, *may be made earlier than 2 years after its date*." (Emphasis added.) 750 ILCS 5/610.5(a) (West 2022). The exception to this two-year waiting requirement is when there is reason to believe serious endangerment to the child exists. *Id.* Thus, according to the plain language of section 610.5(a), neither party in this matter was permitted to seek modification of the parental decision-making responsibilities until January 30, 2022, unless one of the parties presented a reason to believe there was serious endangerment to J.O. Mark did not seek a change in the allocation of parental decision-making responsibilities until his June 14, 2023, petition for indirect civil contempt, which occurred more than two years after the original allocation of parental decision-making responsibilities. Therefore, Mark was not required by statute to plead serious endangerment, nor was the court required to make findings regarding any serious endangerment to J.O.

¶ 19　　　　Lana makes several arguments regarding changes to parenting time. However, none of these arguments are relevant to the issue on appeal. Section 610.5(a) of the Act specifically excludes parenting time from the two-year waiting requirement: "[N]o motion to modify an order allocating parental decision-making responsibilities, *not including parenting time*, may be made earlier than 2 years after its date." (Emphasis added.) *Id.* Furthermore, the statute goes on to state, "Parenting time may be modified *at any time*, *without a showing of serious endangerment*." (Emphasis added.) *Id.* The fact is, the allocation of parenting time and the allocation of parental decision-making responsibilities are two independent things according to the Act.

¶ 20　　　　Mark did not seek to modify the parental decision-making responsibilities until more than two years after the original allocation from the January 30, 2020, order. Thus, he was not required to plead and prove serious endangerment of J.O. Therefore, we find the circuit court did not err when it modified the parental decision-making responsibilities by granting Mark sole parental decision-making responsibility.

¶ 21　　　　　　　　　　　　　　III. CONCLUSION

¶ 22　　　　For the reasons stated, we affirm the circuit court's judgment.

¶ 23　　　　Affirmed.