2025 IL App (2d) 240028
No. 2-24-0028
Opinion filed November 24, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| NANCY REYNOLDS, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-FA-130 |
| | ) | |
| CHRISTOPHER I. REYNOLDS, SR., | ) | Honorable |
| | ) | Robert J. Zalud, |
| Respondent-Appellant. | ) | Judge, Presiding |

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Justice Schostok concurred in the judgment and opinion.
Justice Birkett dissented, with opinion.

**OPINION**

¶ 1    Respondent, Christopher I. Reynolds, Sr., appeals the judgment of the circuit court of McHenry County granting a directed finding in favor of petitioner, Nancy Reynolds, on respondent's amended motion to modify the allocation of parental responsibilities and parenting time.[1] Respondent argues that the trial court erred by applying the wrong legal standard to his request for increased parenting time with the parties' children. We vacate and remand with directions.

---

[1]Although titled otherwise, respondent's amended motion sought only a modification of parenting time.

¶ 2                                    I. BACKGROUND

¶ 3      The parties never married and have two daughters together: D.R., born in 2012, and E.R., born in 2014. On April 13, 2016, the Department of Healthcare and Family Services filed suit to establish proper child support for the two children, which resulted in a June 10, 2016, support order. At that time, the parties' relationship was apparently quite rancorous, with petitioner obtaining a June 21, 2016, *ex parte* emergency order of protection, and respondent, on June 23, 2016, moving to vacate the order claiming the allegations supporting it were false. On June 28, 2016, the trial court granted respondent supervised visitation with the children.

¶ 4      On July 1, 2016, petitioner filed a petition to establish the allocation of parental responsibilities. On July 7, 2016, the parties entered into an agreed parental allocation judgment, designating petitioner as the legal custodian of the children and assigning her the significant decision-making responsibilities, including education, health care, and religious upbringing. The parties agreed that respondent's parenting time consisted of weekly overnight visitation Monday evening through Tuesday morning and alternating weekends on Friday through Sunday. The parties were required to exchange the children at a restaurant in Algonquin. Respondent was not allowed to pick up or drop off the children at their school. Also on July 7, 2016, the parties entered an agreed order vacating the order of protection.

¶ 5      Five years later, on August 23, 2021, petitioner filed a petition to modify child support and contribution to child-related expenses based on the belief that respondent's income had significantly increased. The parties were ordered to mediation to discuss modification of parental responsibilities and economic issues, but they were unable to reach an agreement.

¶ 6      On November 18, 2021, respondent filed a motion to modify the allocation of parental responsibilities and parenting time. Respondent sought primary custody of the children, sole significant decision-making authority, increased parenting time, and adjustments to child support

and other financial issues based on any modifications made. The case progressed, and the motion to modify was scheduled for hearing in May 2023.

¶ 7    On May 11, 2023, respondent filed his amended motion to modify, which sought only an increase in his parenting time. Respondent brought his motion pursuant to sections 602.7 and 610.5 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/602.7, 610.5 (West 2022)) without identifying any applicable subsection. In summary, respondent sought to pick up the children directly from school on his weekly Monday overnights and drop them off at school Tuesday mornings, and to extend his alternating weekends from Thursday after school until the drop-off at school Tuesday mornings. Respondent withdrew all requests to modify the allocation of parental responsibilities.

¶ 8    On May 17, 2023, the hearing on respondent's petition began and continued through dates in July and September 2023. Mark Goldstein, respondent, the guardian *ad litem*, and Krystal Reynolds (respondent's fiancée) testified during respondent's case-in-chief about both the changes in circumstances and the children's best interests. Additionally, respondent's initial first-chair counsel withdrew following the May hearing, and this caused a delay until the hearing resumed in July.

¶ 9    On September 7, 2023, respondent filed a memorandum of law supporting his amended motion to modify and rested his case-in-chief. Then, petitioner orally moved for a directed finding. Petitioner argued that respondent had failed to present a substantial change in circumstances that required a modification in parenting time to serve the children's best interests. In response, respondent first argued that he had "made a strong case with the evidence that we have that there has been since 2016 a very substantial change of circumstances or facts that were unknown at the time of the 2016 order." Shortly later, he quoted section 610.5(a) of the Act (*id.* § 610.5(a)), stating that "[p]arenting time may be modified at any time, without a showing of serious endangerment,

upon a showing of changed circumstances that necessitates modification to serve the best interests of the child." Respondent emphasized the changes in circumstances, including that the children had aged and he had begun full-time remote work allowing him the flexibility to spend more time with the children. Respondent then turned to evidence impacting the children's best interests, focusing on the acrimony between petitioner and respondent and how eliminating in-person exchanges between the current Sunday evening drop-off and the Monday overnight would serve their interests. At this point, before respondent had concluded his remarks, the trial court continued the argument on petitioner's motion for a directed finding. The hearing was continued to October 17, 2023, but because respondent's counsel left the firm, the hearing was delayed again until November 23, 2023, when the hearing substantively resumed.

¶ 10    Following argument, the trial court issued an oral ruling granting the motion for directed finding:

> "On a motion for directed finding, at the close of a petitioner's case on a case that is—that will not go in front of a jury and is a civil matter, it's a two-step process for the Court. Court determines first whether or not the petitioner has established a *prima facie* case of what they need to establish. In this case it's whether or not they've proven [a] substantial change in circumstances *** since the entry of the [July 7, 2016,] Allocation Judgment, then the Court addresses whether or not the modification is necessary to serve the child's best interest. If they have established a *prima facie* case, the Court then goes to a second stage on determining whether or not at this stage, having considered the weight, quality of the evidence, having considered the credibility of the witnesses whether or not they've met their burden at this stage.
>
> There has been testimony that there have been changes since July of 2016. There's been some testimony by expert witnesses in this case regarding whether or not a

modification would be necessary to serve the child's best interest. There has been a *prima facie* case established in this case. The Court then goes to the second stage, whether or not it's been proven by a preponderance of the evidence [under section 610.5(c) of the Act].

　　　***

The Court cannot consider best interest prior to considering [whether a substantial change in circumstances has been proved]. If I find that a substantial change in circumstances has not occurred, the Court does not consider the modification on whether or not it is necessary to serve the child's best interest.

　　　***

[The trial court analyzed the specific evidence presented during the hearing.]

It has been proven there have been changes. Legislature put the word substantial there for a reason. It's not been proven of [*sic*] this Court by a preponderance of the evidence when I consider all of the evidence in this case. And when I consider all of these changes, there's a number of them who testified to [*sic*], even when I consider them in the totality of all the changes together, it's still not a substantial change in this case, a substantial change in circumstances since [July 7, 2016].

　　　***

As a result, [respondent] has not met their [*sic*] burden of proof at this stage. The motion for directed finding is granted."

The trial court entered a written order granting petitioner's motion for directed finding and denying respondent's motion to modify, and it ordered the parties to prepare to resolve petitioner's pending motion to modify child support. We also note that, in granting the motion for directed finding, the court did not make any assessment of the evidence concerning the children's best interests.

¶ 11    On December 28, 2023, petitioner filed a notice of appeal notwithstanding the remaining matters pending before the trial court. On January 10, 2024, respondent filed a motion seeking a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). On January 17, 2024, the court granted respondent's motion and made the findings pursuant to Rule 304(a). On January 18, 2024, respondent filed a timely notice of appeal pursuant to Rule 304(a).

¶ 12                                    II. ANALYSIS

¶ 13                          A. Application of Rule 311

¶ 14    We initially comment on the timing of the issuance of this opinion. For the first time in her response brief, petitioner raised as part of her argument the question of whether this case should have been accelerated as subject to expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018). Rule 311(a)(5) requires the appellate court to issue its decision within 150 days after the filing of a notice of appeal, except for good cause shown. Respondent argues that because this appeal concerns parenting time, it is not subject to accelerated disposition.

¶ 15    Respondent filed his initial notice of appeal on December 28, 2023, and an amended notice of appeal on January 18, 2024. Thereafter, respondent sought relief from the briefing schedule numerous times, and the matter was heard at oral argument on July 24, 2025. An earlier date for oral argument was continued at petitioner's request and without objection.

¶ 16    Rule 311(a) mandates accelerated disposition of appeals from final or interlocutory orders concerning "child custody or allocation of parental responsibilities cases or decisions allowing or denying relocation." Ill. S. Ct. R. 311(a) (eff. July 1, 2018). Rule 311 does not define the term "parental responsibilities." Supreme court rules are interpreted in the same manner as statutes. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). "The primary objective is to ascertain and give effect to the rule's drafters' intent, the surest and most reliable indicator of which is the language of the rule itself, given its plain and ordinary meaning." *People v. Dominguez*, 2012 IL 111336,

¶ 16. In determining the plain meaning of the rule's terms, we should consider the rule "in its entirety, keeping in mind the subject it addresses and the apparent intent of the [drafters] in enacting it." *People v. Perry*, 224 Ill. 2d 312, 323 (2007).

¶ 17    The rule was originally enacted to "expedite the resolution of appeals affecting the care and custody of children" and "to promote stability for *** children whose custody is an issue *** by mandating swifter disposition of [those] appeals." Ill. S. Ct. R. 311(a), Committee Comments (rev. Feb. 26, 2010). The committee comments also acknowledge that the Act now utilizes different terminology than its predecessor, and the rule was amended to reflect those changes. Ill. S. Ct. R. 311(a), Committee Comments (rev. Mar. 8, 2016).

¶ 18    While Rule 311 itself does not define "parental responsibilities cases," according to the Act, parental responsibilities "means both parenting time and significant decision-making responsibilities with respect to a child." 750 ILCS 5/600(d) (West 2022). Nothing in the rule suggests that the subject of this appeal, parenting time, would be treated differently than the rule would treat significant decision-making responsibilities. We read Rule 311(a) to require expedited disposition of appeals concerning parenting time.

¶ 19    This reading is consistent with provisions of Illinois Supreme Court Rule 900(a), (b)(1) (eff. Mar. 8, 2016), which require the trial court to expedite cases involving "allocation of parental responsibilities," which is specifically defined to include "visitation" or "parenting time." We also note the worthy goal of Rule 311—to promote stability for children by mandating swifter resolutions in these disputes. "[I]t is in the best interests of children to have a healthy and close relationship with both parents, as well as with other family members, and thus the visitation rights of the non-custodial parent should be carefully considered." (Internal quotation marks omitted.) *In re Marriage of Krivi*, 283 Ill. App. 3d 772, 777 (1996). If the case concerns parenting time, then

it makes sense to expedite any appeals concerning modification as we would any other similar child-related issues. We think the supreme court intended Rule 311 to apply to parenting time.

¶ 20    In view of our holding, we point out that neither party, including petitioner, who has brought the issue to our attention, complied with Rule 311's requirement of a special caption on the notice of appeal (and on every pleading brief and motion that follows) to state: "THIS APPEAL INVOLVES A MATTER SUBJECT TO EXPEDITED DISPOSITION UNDER RULE 311(a)." Ill. S. Ct. R. 311(a) (eff. July 1, 2018). Further, we are compelled to advise both parties that, despite any controversy about whether the rule applied here, any party can request acceleration, upon good cause shown. Ill. S. Ct. R. 311(b) (eff. July 1, 2018). Respondent's original error concerning the rule was compounded by his untimely briefing and contributed to this regrettable delay. We admonish the parties' attorneys not to let such an error occur again. Given all this, we find good cause exists for issuing our decision more than 150 days after the filing deadline. See *In re Marriage of Katsap*, 2022 IL App (2d) 210706, ¶ 95.

¶ 21               B. The Legal Standard Regarding Parenting Time

¶ 22    We now turn to the substance of this appeal. Respondent argues that the trial court erred in applying the "substantial change" standard to his motion to modify parenting time and, thus, granting petitioner's motion for a directed finding.

¶ 23               1. *Standards Governing Motions for a Directed Finding*

¶ 24    We begin with the standards governing the review of the trial court's judgment on a motion for directed finding. A court assesses a motion for directed finding in a two-step process. *In re Marriage of Larsen*, 2023 IL App (1st) 230212, ¶ 121. In the first step, the court determines whether the plaintiff or nonmoving party has presented a *prima facie* case as a matter of law. *Id.* To demonstrate a *prima facie* case, the nonmoving party must present at least some evidence of every element of the underlying cause of action. *Id.* If the nonmoving party has failed to meet its

burden, the court must grant the motion and enter judgment in favor of the defendant or moving party. *Id.* Such a determination presents a question of law, and we review *de novo* the court's ruling, performing the same analysis as the court below. *Id.*

¶ 25    If, however, the nonmoving party has met its burden of presenting a *prima facie* case, the trial court moves on to the second step. *Id.* ¶ 122. In this step, the court considers all the evidence presented, weighing the evidence, determining the credibility of the witnesses, and making all reasonable inferences arising from the evidence. *Id.*[2] By weighing the evidence, some of the evidence presented by the nonmoving party may be negated. *Id.* After weighing all the evidence (with the possible negation of some of it), the court must determine whether there remains sufficient evidence to establish the nonmoving party's *prima facie* case. *Id.* ¶ 123. If sufficient evidence establishing the *prima facie* case remains, the court should deny the motion for directed finding and proceed with the trial; if the *prima facie* case no longer can be established, the court should grant the motion and enter judgment in favor of the moving party. *Id.* The court's ruling on a motion for directed finding granted at the second step is reviewed to determine whether it was against the manifest weight of the evidence. *Id.*

¶ 26              2. *The Applicable Statutory Framework for a Request to Modify*

¶ 27    Respondent's amended motion to modify asked the court to increase his parenting time. The motion to modify was brought under section 610.5 of the Act (750 ILCS 5/610.5 (West 2022)),

---

[2]We note that the directed finding analysis differs from the directed verdict analysis because, where the court is proceeding without a jury, it weighs the evidence as described, but where the court is proceeding with a jury, it applies the *Pedrick* standard (see *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494 (1967)), and considers the evidence in the light most favorable to the plaintiff or nonmoving party. See *Larsen*, 2023 IL App (1st) 230212, ¶ 122.

which governs judicial modification of parental responsibility allocations. We examine the pertinent statutory provisions before turning to respondent's contentions on appeal.

¶ 28    Section 610.5 provides, relevantly:

"(a) Unless by stipulation of the parties or except as provided in Section 603.10 of this Act, no motion to modify an order allocating parental decision-making responsibilities, not including parenting time, may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his or her mental, moral, or physical health or significantly impair the child's emotional development. Parenting time may be modified at any time, without a showing of serious endangerment, upon a showing of changed circumstances that necessitates modification to serve the best interests of the child.

(b) (Blank).

(c) Except in a case concerning the modification of any restriction of parental responsibilities under Section 603.10, the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." *Id.*

¶ 29                              3. *Correct Legal Standard*

¶ 30    In resolving the motion for directed finding, the trial court decided that, while respondent had presented a *prima facie* case regarding substantial change, he had not met his burden of demonstrating a substantial change in circumstances after the court had considered and weighed all the evidence. On appeal, respondent argues the trial court used the wrong legal standard

throughout—all he needed at the time of the motion for directed finding was to demonstrate that a simple change in circumstances had occurred. Respondent contends that the correct legal standard is contained in the plain and unambiguous language of the Act and that subsection (a) of section 610.5 of the Act, not subsection (c), governs situations in which a party has only requested a modification of parenting time.

¶ 31    To determine which standard applies to this case, we must interpret the relevant provisions of the enactment. Statutory interpretation presents a legal question that we review *de novo*, performing the same analysis that the trial court would perform. *Haage v. Zavala*, 2021 IL 125918, ¶ 41. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent and the most reliable indicator of that intent is the language of the statute given its plain and ordinary meaning. *Id.* ¶ 44. "In determining the plain meaning of statutory terms, we consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). If the language is clear and unambiguous, then it should be applied as written and without resort to additional aids of construction. *Village of Lincolnshire v. Olvera*, 2025 IL 130775, ¶ 19.

¶ 32    Applying these principles to subsections (a) and (c), we see that subsection (a) distinguishes between parental decision-making responsibilities, which it addresses in its first sentence, and parenting time, which it addresses in the second sentence. 750 ILCS 5/610.5(a) (West 2022). Subsection (a) limits motions to modify allocations of "parental decision-making responsibilities, *not including parenting time*," made within two years after entry to those meeting certain requirements. (Emphasis added.) *Id.* On the other hand, parenting time may be modified at any time upon a showing of (1) "changed circumstances" that (2) "necessitates modification to serve the best interests of the child." *Id.* Subsection (c) deals with the requirements to secure a modification of "a parenting plan or allocation judgment" and it does not mention parenting time.

*Id.* § 610.5(c). To receive a modification of a parenting plan or allocation judgment, a requesting party must convince the trial court by a preponderance of the evidence that (1) "a substantial change has occurred in the circumstances of the child or of either parent," and (2) "modification is necessary to serve the child's best interests." *Id.* The language of each subsection is clear and unambiguous. We therefore hold that, in light of the clear and unambiguous language, we must apply each subsection as written. *Olvera*, 2025 IL 130775, ¶ 19.

¶ 33 The placement in separate subsections of different categories of modifications—parenting time in section 610.5(a) of the Act and parenting plans or allocation judgments in section 610.5(c) of the Act—underscores an important difference between the standards applicable to each type of modification. A modification of parenting time requires only "changed" circumstances, while a modification of the parenting plan or allocation judgment requires a "substantial change" in circumstances. It is well settled that, where the legislature uses certain language in one instance and different language in another, different meanings or results were intended. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28. Additionally, we cannot, under the guise of statutory construction, declare that the legislature did not mean what the plain language of the statute says, and we may not add provisions or limitations to the statute the legislature did not include. *Id.* Based on these principles, the second sentence of subsection (a) governs the burden of proof regarding requests to modify parenting time, and subsection (c) does not. It governs requests to modify parenting plans or allocation judgments.[3]

---

[3]This case does not present a situation in which a modification to parenting time is requested as part of a larger request to modify a parenting plan or an allocation judgment, and we do not comment on whether such an embedded request would be subject to only a simple change in circumstances or a substantial change in circumstances.

¶ 34    Our conclusion is supported by our recent, unpublished decision of *In re Marriage of Salbi*, 2024 IL App (2d) 240322-U, ¶¶ 66-72, which addressed this issue. We noted that section 610.5(a) of the Act specifically addressed parenting time and expressly provided only a simple change in circumstances was needed for a modification of parenting time. *Id.* ¶ 70. We reasoned that had the legislature intended for a higher standard to apply to such a request, it could have employed language requiring a "substantial change in circumstances," as it did in subsection (c). *Id.*

¶ 35    *Salbi* also declined to follow the only published authority addressing the issue, *In re Marriage of Trapkus*, 2022 IL App (3d) 190631, on the grounds that the *Trapkus* court improperly employed extrinsic aids of statutory construction by examining " 'the evolution of the modification statutes' " before concluding that the substantial change standard of section 610.5(c) applied to requests to modify parenting time. *Salbi*, 2024 IL App (2d) 240322-U, ¶ 71.

¶ 36    In *Trapkus*, the original dissolution judgment entered in 2013 allocated physical care and custody of the minor children to the mother, noting that joint legal custody was inappropriate due to "animosity" between the parties. *Trapkus*, 2022 IL App (3d) 190631, ¶ 3. The father had parenting time every other weekend, alternate Mondays and overnights on Wednesday, with more time in the summer. *Id.* ¶¶ 9, 11.

¶ 37    In 2018, the father filed a petition seeking *equal* parenting time and other relief. *Id.* ¶ 7. The mother also petitioned for relief from certain restrictions, as well as a change in the holiday schedule. After a hearing, the trial court found no substantial change in circumstances had occurred but stated that the statute allowed modifications to be made "in certain situations" when no change in circumstances had occurred. *Id.* ¶ 13. However, the trial court did not indicate "whether any of those situations existed in this case." *Id.* The trial court denied the father's petition for equal parenting time (*id.* ¶ 14) but granted the mother's requests for relief from restrictions and for

changes to the holiday schedule. *Id.* ¶¶ 14-15. The father appealed, arguing, among other things, that the trial court applied the wrong standard in determining his petition for equal time. *Id.* ¶ 21.

¶ 38 On appeal, *inter alia*, *Trapkus* affirmed the denial of the petition for equal parenting time and rejected the father's argument that the statute required only that he establish a change in circumstances, not a substantial change in circumstances. *Id.* ¶ 29. The court initially reviewed the language of the current section 610.5, including the second sentence from section 610.5(a): "Parenting time may be modified at any time, without a showing of serious endangerment, upon a showing of changed circumstances that necessitates modification to serve the best interests of the child." 750 ILCS 5/610.5(a) (West 2022). *Trapkus* then observed that "[w]hile it may appear that section 610.5(a) contains a legal standard applicable to motions seeking the modification of a parenting-time allocation, a review of the evolution of the modification statutes shows otherwise." *Trapkus*, 2022 IL App (3d) 190631, ¶ 24.[4]

¶ 39 *Trapkus* based its ruling on a comment in a 1998 supreme court case, *Department of Public Aid ex rel. Davis v. Brewer*, 183 Ill. 2d 540 (1998). *Trapkus*, 2022 IL App (3d) 190631, ¶¶ 25-29. But the issue in *Brewer* was whether serious endangerment had to be proved by clear and convincing evidence in custody modifications brought within two years, or whether the trial court need only find reason to believe serious endangerment to allow the request for a hearing on the modification request. *Brewer*, 183 Ill. 2d at 552. *Brewer* held that the plain language of the statute existing at that time required a party to meet the "procedural prerequisite" (*id.* at 556) of " 'reason

---

[4]We note that the parties in *Trapkus* did not argue nor did the court address when or whether a request to modify parenting time should be construed as a request to modify a parenting plan or an allocation judgment.

to believe' " (*id.*) before any hearing was allowed, after which the legal standard of clear and convincing evidence in subsection (b) would be applied at the hearing. *Id.*

¶ 40    *Trapkus* focused on *Brewer*'s observations—based on the statute *as it then existed*—of the " 'gatekeeping function' " in subsection (a) (*Trapkus*, 2022 IL App (3d) 190631, ¶ 24 (quoting *Brewer*, 183 Ill. 2d at 554-56)) and the legal standards in subsection (b), the predecessor to subsection (c). *Id.* ¶ 28 (discussing *Brewer*, 183 Ill. 2d at 554-56). *Trapkus* held that, because *Brewer* construed the statute *as it then existed* to separate the gatekeeping function in subsection (a) from the legal standard of proof required in (the former) subsection (b), the legislature's subsequent amendments to subsection (a) were limited by that interpretation. In other words, they could only serve a gatekeeping function, despite the plain language of the current statute. *Trapkus* ruled: "The changes made by the General Assembly to subsection (a) evince an intent for that subsection to remain as a gateway *** in line with *** *Brewer*." *Id.* ¶ 27 ("There is nothing in the amended version of section 610.5 to indicate that the General Assembly sought to alter the *Brewer* interpretation of subsection (a) as a gateway to an evidentiary hearing.").

¶ 41    Similarly, *Trapkus* pointed to *Brewer*'s interpretation of subsection (b) of the *former* statute as containing the legal standard for its conclusion that "[i]f the General Assembly had intended to create a new legal standard in subsection (a) for deciding parenting-time modification requests, it would have had to amend subsection (c)." *Id.* ¶ 28 ("Furthermore, *Brewer* interpreted subsection (c)'s predecessor as containing the legal standard for evidentiary hearings on modification requests [citation], and when the General Assembly amended section 610.5, it did not amend subsection (c).").

¶ 42    We disagree with this interpretation. First, as we said in *Salbi*, given the plain language of the statute, we think *Trapkus* strayed by resorting to extrinsic aids and failing to apply the plain language of the statute. *Salbi*, 2024 IL App (2d) 240322-U, ¶ 71; see *Brunton v. Kruger*, 2015 IL

117663, ¶ 24 ("Further, we will not utilize extrinsic aids of statutory interpretation unless the statutory language is unclear or ambiguous."); *Allstate Insurance Co. v. Menards, Inc.*, 202 Ill. 2d 586, 591 (2002) ("When statutory language is ambiguous, it is appropriate to resort to extrinsic aids of construction such as an examination of the legislative history."). The language in subsection (a) is not ambiguous or unclear, nor did *Trapkus* assert that it was.

¶ 43     Next, it is true, as *Trapkus* asserts, that where a court construes the language of a statute that " 'construction becomes, in effect, a part of the statute.' " *Trapkus*, 2022 IL App (3d) 190631, ¶ 27 (quoting *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19). But we must part ways with *Trapkus*'s attempt to ignore the plain language of subsection (a) and use *Brewer* to shun its plain meaning and confine it to serve only as a "gateway." *Id.* First and foremost, our duty is to discern the intent of the legislature. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 52. The most reliable indicator of legislative intent is the language of the statute itself, which we must give its plain and ordinary meaning. *Van Dyke v. White*, 2019 IL 121452, ¶ 46. Where the legislature changes the statute such that the current version of subsection (a) no longer serves the *sole* function of gatekeeping requests to modify within two years, then that construction in *Brewer* cannot create a presumption contrary to the legislature's plain language. See *Barrall v. Board of Trustees of John A. Logan Community College*, 2019 IL App (5th) 180284, ¶ 33 (refusing to apply the rule where a contrary legislative intent was clear), *aff'd*, 2020 IL 125535.

¶ 44     We have also considered whether we ought to give the holding in *Trapkus* the effect it gave the holding in *Brewer*: "Notably, 'after [the supreme court] has construed a statute, that construction becomes, in effect, a part of the statute ***.' " *Trapkus*, 2022 IL App (3d) 190631, ¶ 27 (quoting *Village of Vernon Hills*, 2015 IL 118170, ¶ 19). But we will not do so for two reasons. First, as discussed above, if the statute is not ambiguous, then these extrinsic aids of statutory

construction, like legislative acquiescence, should not be used. See *People v. Castillo*, 2022 IL 127894, ¶ 24.

¶ 45    Second, *Trapkus* was decided just three years ago, and this rule seems best applied when more time has passed and more courts have ruled upon it. See, *e.g.*, 2B Norman Singer, Sutherland Statutory Construction § 49:9 (7th ed. Nov. 2025 Update) ("Legislative acquiescence is of small consequence when a legislature is unaware of a contemporaneous interpretation."); *In re Tribune Co. Fraudulent Conveyance Litigation*, 946 F.3d 66, 95 (2d Cir. 2016) ("[T]he failure of Congress to respond to court decisions is of interpretive significance only when the decisions are large in number and universally, or almost so, followed."); *People v. Johnson*, 2019 IL 123318, ¶ 20 (applying a construction to the burglary statute ascribed by numerous Illinois decisions over "50-plus years"); *In re Marriage of O'Neill*, 138 Ill. 2d 487, 494-96 (1990) (interpreting a statute consistent with the holdings of numerous cases over more than 20 years and in the face of several amendments that left the issue unaddressed).

¶ 46    The plain language is enough, but if we were to look at the legislative history of section 610.5 of the Act (750 ILCS 5/610.5 (West 2022)), we would be reassured that the legislature did not intend a result opposite to its written words. After years of study, the Illinois legislature updated the Act in 2015 (Pub. Act 99-90 (eff. Jan. 1, 2016)), and among other changes, "revamp[ed] *** concepts formerly called custody, parenting time, visitation, and removal." William J. Scott & Robin R. Miller, *The New Illinois Marriage and Dissolution of Marriage Act: An Overview*, DCBA Brief: J. DuPage Cnty. Bar Ass'n, Dec. 2015, at 10, 12, https://cdn.ymaws.com/www.dcba.org/resource/resmgr/brief_pdf/brief_dec2015.pdf [https://perma.cc/C6QT-D7X4].

¶ 47    Before the comprehensive amendments, section 610(a) contained only the first sentence addressed in *Brewer*:

"Unless by stipulation of the parties, no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." (Internal quotation marks omitted.) *Brewer*, 183 Ill. 2d at 553.

Subsection (b), which was also discussed in *Brewer*, provided that a court should not modify a prior custody judgment except upon clear and convincing evidence of a (simple) change in circumstances and a best interest finding. *Id.*

¶ 48    The first iteration of the amendments to the Act repealed section 610 and added a new modification statute—section 610.5, which retained in large part the previous subsection (a), although it used the new terminology for custody:

"Unless by stipulation of the parties ***, no motion to modify an order allocating parental responsibilities may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his or her mental, moral, or physical health or significantly impair the child's emotional development." 750 ILCS 5/610.5(a) (West Supp. 2015).

¶ 49    Section 610(b) was repealed and recast with substantial changes in section 610.5(c), now reading:

"[T]he court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan ***, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." *Id.* § 610.5(c).

¶ 50    Significantly, the new section 610.5(c) differed from the old section 610(b) in that section 610(b) required proof of a *simple* change in circumstances, but subsection 610.5(c) mandated a *substantial* change in circumstances and the quantum of proof was reduced from clear and convincing evidence in old subsection 610(b) to a preponderance of the evidence in subsection 610.5(c). See David E. Braden, *Judicial Discretion v. Predictable Outcomes: A Review of the 2016 Amendments to the Illinois Marriage and Dissolution of Marriage Act*, 92 Chi.-Kent L. Rev. 249, 273-74 (2017) ("The new section 610.5(c) of the [Act] substantially changes the repealed section 610(b) in the following ways. First, the provision now provides that the court *shall* modify a parenting plan or allocation judgment when (1) a substantial change has occurred in the circumstances of the child or of either parent and (2) a modification is necessary to serve the child's best interests—rather than proceeding from the presumption that the court will *not* modify a prior custody judgment. Second, the provision changes the burden of proof from requiring clear and convincing evidence that a change has occurred to requiring a showing, by a *preponderance of the evidence*, that a *substantial* change has occurred." (Emphases in original.)).

¶ 51    But soon after the adoption of these changes, subsection (a) was amended again. Pub. Act 99-763, § 5 (eff. Jan. 1, 2017) (amending 750 ILCS 5/610.5(a)). The relevant changes included additional words in the first sentence of subsection (a) and a second sentence, which are reproduced here italicized:

"Unless by stipulation of the parties or except as provided in Section 603.10 of this Act, no motion to modify an order allocating parental *decision-making* responsibilities, *not including parenting time*, may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his or her mental, moral, or physical health or significantly impair the child's emotional development. *Parenting time may be modified*

- 19 -

*at any time, without a showing of serious endangerment, upon a showing of changed circumstances that necessitates modification to serve the best interests of the child.*" (Emphases added.) 750 ILCS 5/610.5(a) (West 2018).

¶ 52    In the face of this change, *Trapkus* saw "nothing in the amended version of section 610.5 to indicate that the General Assembly sought to alter the *Brewer* interpretation of subsection (a) as a gateway to an evidentiary hearing." *Trapkus*, 2022 IL App (3d) 190631, ¶ 27. We disagree and see the plain language as such an indication. In the 2017 version, parenting time is now carefully carved out of the gatekeeping process required for attempts to modify allocations of parental decision-making responsibilities within two years. The next sentence addresses parenting time change requests and explicitly allows parenting time to be modified *at any time* and with only a simple change in circumstances. If, as *Trapkus* held, the legislature meant to require that parenting times be changed only upon a showing of a substantial changes in circumstances they could have easily said so, as they did in subsection 610.5(c), but they did not. See *Masterton v. Village of Glenview Police Pension Board*, 2022 IL App (1st) 220307, ¶ 47 ("When the legislature uses certain language in one section of a statute and different language in another part, courts assume that the legislature intended different meanings."). "Changed circumstances" does not mean "substantial change of circumstances." Any other reading fails to honor the plain language.

¶ 53    As the foregoing discussion makes clear, the parenting time provision was added after the comprehensive amendments. The Act defines the new terminology for family issues. "Parental responsibilities" means both parenting time and significant decision-making responsibilities with respect to a child. 750 ILCS 5/600(d) (West 2022). "Parenting time" means the time during which a parent is responsible for exercising caretaking functions and nonsignificant decision-making responsibilities with respect to the child. *Id.* § 600(e). "Parenting plan" means a written agreement that allocates significant decision-making responsibilities, parenting time, or both. *Id.* § 600(f).

When the legislature added the specific language concerning parenting time to subsection 610.5(a), it appears to us that it was using the more precise term "parenting time" to differentiate it from the more general terms of "parental responsibilities" in subsection (a) and "parenting plan" in subsection (c). See *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) (Where a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern.). We further assume that the legislature meant this follow-on change in the law in 2017 to allow modifications of "parenting time" unfettered timing ("at any time" (750 ILCS 5/610.5(a) (West 2022))) and with a less onerous burden of proof ("changed circumstances" (*id.*)). See *People v. Hicks*, 119 Ill. 2d 29, 34 (1987) ("Absent substantial considerations to the contrary, 'an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed.' " (quoting *People v. Nunn*, 77 Ill. 2d 243, 248 (1979))). If it was the intention of the legislature that changing a pick-up time should not be as difficult as changing parental decision-making or a parenting plan, then this language serves the purpose very well.

¶ 54     After *Salbi* was decided, a recent unreported Fourth District case made the same determination we make here—that "the plain language of section 610.5(a) requires a party seeking a modification of parenting time to show only changed circumstances, as opposed to a substantial change of circumstances." *Erik S. v. Hollie S.*, 2025 IL App (4th) 241337-U, ¶ 71. In *Erik S.*, the court considered the issue of the standard to apply to a request to modify parenting time: a simple change in circumstances or a substantial change in circumstances. The court concluded that the "second sentence of section 610.5(a) clearly states parenting time may be modified upon a showing of 'changed circumstances that necessitates modification to serve the best interests of the child.' [Citation.] If the legislature intended for the changed circumstances to be 'substantial,' it would have said so." *Id.* ¶ 71. *Erik S.* also shared our concern that *Trapkus* improperly resorted to

extrinsic aids when the plain meaning would have done the job. *Id.* ¶ 71 ("[D]espite the clear language of the statute, the Third District unnecessarily, in this court's opinion, examined extrinsic aids of statutory construction to determine that the applicable legal standard required a 'substantial change' in circumstances."). We find *Erik S.* persuasive and agree that the standard for modifications to parenting time is a showing of changed circumstances that necessitates modification to serve the best interests of the child. *Id.*

¶ 55    Finally, we note petitioner's contentions. First, she complains that *Salbi* is nonprecedential. But Illinois Supreme Court Rule 23(e) (eff. June 3, 2025) allows a party to cite a nonprecedential disposition entered after January 1, 2021, for persuasive purposes, and this is exactly what respondent did. Next, she asserts that the trial court was obligated to follow *In re Marriage of Burns*, 2019 IL App (2d) 180715, where we stated that subsection (c) required a substantial change in circumstances. *Id.* ¶¶ 25-26. But that case is distinguishable, as well as the others on which she relies. In none of those cases were we or the trial court called upon to determine the correct legal standard applicable to the respondent's request to modify parenting time. See, *e.g.*, *Foust v. Forest Preserve District*, 2016 IL App (1st) 160873, ¶ 51 (the case the defendant relied upon did not analyze the issue presented in the case at bar; the court found that it did not "provide any insight into [its] analysis"). Additionally, the cases cited by petitioner involved changes to both the allocation of parental responsibilities *and* the allocation of parenting time. See, *e.g.*, *Burns*, 2019 IL App (2d) 180715, ¶ 6. As we detail above, subsection (c) expressly covers parenting plans and allocation judgments whereas subsection (a) governs parenting time. 750 ILCS 5/610.5(a), (c) (West 2022).

¶ 56    Petitioner also charges that respondent's arguments here on this point are disingenuous because his arguments below (at best) equivocated as to the proper standard. It is true that respondent asserted in his written memos that the substantial change standard applied, although he

argued orally to the trial court applying "changed circumstances" as the requirement. Nevertheless, it is still incumbent upon the trial court to properly apply the law as written, giving effect to the clear and unambiguous statutory language. *Haage*, 2021 IL 125918, ¶ 44. This was not done, and this failure requires us to vacate its judgment.

¶ 57    Petitioner next contends that respondent's appellate counsel was dilatory in prosecuting the appeal, which allowed him to rely upon *Salbi*, pointing to the numerous extensions of time granted him in which to complete his initial appellate brief, which allowed him to cite to the then-released *Salbi* case. Despite the veracity of petitioner's representations, her argument fails. First, because, as she admits, she did not object to respondent's requests for extensions of time. Second, because, as we have held above, section 610.5(a) is clear and unambiguous, and the trial court was bound to apply the statute as written. Lastly, petitioner requests that we affirm on the ground that respondent failed in his burden to prove the best-interests prong. This argument is a nonstarter for the simple reason that the trial court did not reach the issue of best interests in its analysis. We reject petitioner's contentions.

¶ 58    Accordingly, we hold that, pursuant to section 610.5(a) of the Act, a party seeking to solely modify parenting time needs to show only a simple change in circumstances, not a substantial change in circumstances. Thus, the trial court applied the incorrect legal standard to respondent's amended motion to modify. We therefore vacate the court's grant of the motion for directed finding. Because the court considered the evidence through the incorrect legal standard, we remand the matter and direct it to consider whether respondent made a sufficient demonstration of changed, as opposed to substantially changed, circumstances. If the court concludes respondent has made the necessary showing, it shall then consider whether he has demonstrated that a modification in parenting time is necessary to serve the best interests of the children. Should respondent succeed in this showing, the hearing shall resume with petitioner's case-in-chief.

¶ 59                                        III. CONCLUSION

¶ 60    For the foregoing reasons, we vacate the judgment of the circuit court of McHenry County and remand the cause with directions.

¶ 61    Vacated and remanded with directions.

¶ 62    JUSTICE BIRKETT, dissenting:

¶ 63    I agree with my colleagues regarding the unfortunate failure to recognize and schedule this case as an accelerated matter pursuant to Illinois Supreme Court Rule 311 (eff. July 1, 2018) and join in their admonition of the parties to be better cognizant of the fact that the statutory definitions of specific words and phrases should be given the same effect in our supreme court rules as in the statutes themselves. We, too, dropped the ball by failing to recognize this cause should have been accelerated, and I am confident that, in future, along with the parties and future litigants, we will recognize and uniformly apply defined terms and expedite cases before us involving changes to the allocation of parental responsibilities. See 750 ILCS 5/600 (West 2022) (definitions contained therein). I thus agree with part II.A of the opinion above (*supra* ¶¶ 12-20).

¶ 64    I part ways with my colleagues, however, on the proper interpretation of section 610.5 of the Illinois Marriage and Dissolution of Marriage Act (Act) (*id.* § 610.5). The fundamental flaw in my colleagues' reasoning is revealed in the first questions asked of respondent at oral argument. Respondent was asked why he had not designated this case as accelerated under Rule 311. Respondent replied that he did not believe Rule 311 applied to a situation "where the only issue before the court was a request an increase in parenting time." When reminded of the definitions of section 600, and particularly the fact that parenting time is expressly included within the definition of parental responsibilities (*id.* § 600(d); see Ill. S. Ct. R. 311 (eff. July 1, 2018) ("The expedited procedures in this subpart shall apply to appeals from final orders in child custody or allocation of parental responsibilities cases ***.")), respondent maintained his position that Rule 311 did not

apply to a stand-alone request to modify parenting time. This flawed understanding and refusal to apply the definitions for the words of the statute (and supreme court rule) permeate respondent's analysis and was endorsed and adopted by the majority.

¶ 65    I believe that the plain language of section 610.5 unambiguously compels the result that, in order to change any facet of parental responsibilities, including parenting time, the trial court must determine that a substantial change in circumstances has occurred. Because I arrive at a reasonable interpretation of the language of section 610.5 based solely on the language employed in the provision, and in light of the differing result my colleagues have reached, section 610.5 is arguably ambiguous. Therefore, resort to other aids of construction is both appropriate and points to the necessity of proving a substantial change in circumstances before the court will grant a change to parenting time between the parties. Finally, considerations of *stare decisis* and maintaining a uniform body of precedent require that we adhere to the construction placed on section 610.5 by the heretofore only reported authority to consider this issue. For these reasons, I respectfully dissent in part.

¶ 66                                  I. Preliminary Factual Issues

¶ 67    My colleagues adequately explain the factual background in this case, but I wish to emphasize several points. The trial court commented a few times on the apparent acrimony existing between the two parties. The record supports this unfortunate state of affairs. In addition, I note that, when petitioner requested an increase in child support for the children, respondent's reply was to file a counterpetition to strip petitioner of her primary parental responsibilities and to take primary custody of the children for himself, supporting his petition with rather incendiary allegations of petitioner's misconduct towards him, her use of the children as pawns in the tatters of their relationship, and other claims of misfeasance regarding the children. As this matter progressed, respondent's expert witness did not support his claim that the parental responsibilities

should be altered and, instead, supported the status quo with petitioner retaining the primary decision-making responsibilities. Respondent then withdrew his requests for modification of all but the parenting time—a request which added a significant amount of parenting time for him with a commensurately significant decrease in petitioner's parenting time. The record is therefore replete with respondent's tit-for-tat-and-then-some legal strategy, culminating in the instant appeal.

¶ 68     My colleagues dismiss petitioner's contention that respondent's arguments as to the proper standard are disingenuous and equivocal, because his written argument advocated the proper (in my view) substantial change standard for the hearing, while some of his verbal argument may have advocated a simple change in circumstances. *Supra* ¶ 56. The record rebuts the majority's claim. In the September 7, 2023, argument on petitioner's motion for directed finding, respondent argued that he had "demonstrated there is a *prima facie* case that is not subject to a motion for directed finding" because he had made "a strong case with the evidence that we have that there has been since 2016 a very substantial change of circumstances or facts that were unknown at the time of the 2016 order" setting forth, among other things, the parenting time schedule. Clearly, respondent was orally, as well as in his written arguments, advocating the proper, substantial change standard of proof at the hearing. Respondent correctly grasped the proper evidentiary standard before the trial court, and any exhortations to the contrary in this appeal are unsupported in the record.

¶ 69     Moreover, the trial court got it right, too. In its ruling on petitioner's motion for a directed finding, the court employed the proper standard, requiring that respondent demonstrate a substantial change. Due to the standards of considering a motion for a directed finding, the court concluded that respondent had indeed made a *prima facie* case—presented some evidence (*In re Marriage of Larsen*, 2023 IL App (1st) 230212, ¶ 121)—of substantial change, but when considering all of the evidence, it concluded that evidence presented by petitioner negated some

of respondent's evidence (*id.* ¶ 122), leading to its conclusion that respondent was unable to demonstrate that there had been a substantial change in circumstances.

¶ 70                    II. The Proper Interpretation of Section 610.5 of the Act

¶ 71    I briefly review the principles of statutory interpretation. The cardinal rule of statutory interpretation, to which all other canons and rules are subordinate, is to ascertain and give effect to the legislature's intent. *Thomas v. Khoury*, 2021 IL 126074, ¶ 11. It is well settled that the most reliable indicator of the legislature's intent is the language employed in the statute, given its plain and ordinary meaning. *Id.* The statute should be read as a whole, and its words and phrases should be interpreted with respect to other relevant provisions of the statute and should not be considered in isolation. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. Every word, clause, and sentence must be given a reasonable meaning, if possible, and none should be rendered superfluous. *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 17. Moreover, when a statute defines the terms and phrases it uses, those terms and phrases must be construed according to the very definitions used by the statute. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 540 (1997). In determining the legislature's intent, in addition to the language employed, a court may also consider the reason for the statute, the problems to be remedied and the purpose to be achieved, and the consequences of construing the statute one way or another. *Id.* A court must further presume that the legislature did not intend absurdity, inconvenience, or injustice in enacting the statute. *Lakewood Nursing*, 2019 IL 124019, ¶ 17. Moreover, if a literal interpretation of the provision would lead to "consequences that the legislature could not have contemplated and surely did not intend, [the] court will give the statutory language a reasonable interpretation." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510 (2007); see *Ohle v. The Neiman Marcus Group*, 2016 IL App (1st) 141994, ¶ 38 (same).

¶ 72     The provisions at issue are given above, so I will not repeat them here. *Supra* ¶ 28 (quoting 750 ILCS 5/610.5(a)-(c) (West 2022)). In looking at subsection (a) versus subsection (c), the subject matter of each subsection is discrete. Subsection (a) is concerned with a motion to modify an order allocating parental responsibilities. 750 ILCS 5/610.5(a) (West 2022) ("no *motion* to modify an order allocating parental decision-making responsibilities, [with the exception of parenting time], may be made earlier than 2 years after its date" (emphasis added)). Subsection (c), by contrast, is concerned with the court and the circumstances that will lead it to modifying a parenting plan or allocation judgment. *Id.* § 610.5(c) ("the *court* shall modify a parenting plan or allocation judgment" upon making certain findings (emphasis added)). Subsection (a), by excepting parenting time from the two-year time limit, allows "parenting time" to be modified at any time, further describing what the movant must allege in the "motion to modify" to secure a hearing. *Id.* § 610.5(a). By contrast, subsection (c) clearly governs the conduct of the hearing, requiring the court to grant the motion to modify (which necessarily includes a motion to modify parenting time standing alone) if it "finds, by a preponderance of the evidence, *** a substantial change has occurred *** and that a modification is necessary to serve the child's best interests." *Id.* § 610.5(c).

¶ 73     This structural differentiation is borne out by the definitions provided in this part of the Act. Allocation judgment means "a judgment allocating parental responsibilities." *Id.* § 600(b). Parenting plan means "a written agreement that allocates significant decision-making responsibilities, parenting time, or both." *Id.* § 600(f). Parental responsibilities "means both parenting time and significant decision-making responsibilities with respect to a child." *Id.* § 600(d). Parenting time "means the time during which a parent is responsible for exercising caretaking functions and non-significant decision-making responsibilities with respect to the child." *Id.* § 600(e).

¶ 74    Subsection (a) begins by time-limiting when a motion to modify an allocation judgment may be brought. *Id.* § 610.5(a). An allocation judgment has allocated "parental responsibilities," meaning parenting time and significant decision-making responsibilities with respect to the child. Thus, parenting time would be subject to the two-year limitation, but the "not including parenting time" clause of the first sentence of subsection (a) specifically excepts parenting time from that limit. *Id.* The second sentence of subsection (a) provides how a motion to modify parenting time, standing alone, is to be handled. *Id.* Subsection (a) also provides a mechanism, including the requirements of what must be included in the motion, to bring a motion to modify an allocation judgment, before the two-year time limit has elapsed: an affidavit that the child's environment is dangerous and with the court's permission. *Id.* Subsection (a) is silent about what is required to bring a motion to modify after two years has elapsed, leading to the inference that it may be brought solely on the basis that sufficient time has elapsed since the entry of the previous allocation judgment. *Id.* The second sentence of subsection (a) continues in this vein, describing what is required to make a motion to modify parenting time alone: a showing of changed circumstances that necessitates modification to serve the child's best interests. *Id.* Thus, subsection (a) is clearly and unambiguously concerned with the motion to modify—either the allocation judgment in toto or parenting time standing alone.

¶ 75    The focus of subsection (c) is entirely upon what the court must find: "the court shall modify a parenting plan[5] or allocation judgment when necessary to serve the child's best interests."

---

[5]I note that the definition of "parenting plan" essentially covers all the bases of the allocation judgment: "a written agreement that allocates significant decision-making responsibilities, parenting time, or both." 750 ILCS 5/600(f) (West 2022). "Allocation judgment" is defined as a judgment allocating both parenting time and significant decision-making responsibilities with respect to a child. *Id.* § 600(b), (d).

*Id.* § 610.5(c). The court must make two findings: first, that there has been a substantial change in circumstances, and second, that modification is necessary to serve the child's best interests. *Id.* Subsection (c) also includes an evidentiary burden—preponderance of the evidence—to prove there has been a substantial change in circumstances. *Id.* It is the express inclusion of this evidentiary burden that confirms the focus of subsection (c) is clearly and unambiguously upon the hearing—either on the motion to modify the allocation judgment or the motion to modify parenting time.

¶ 76    There is a further wrinkle to consider between subsections (a) and (c): subsection (a), if given substantive instead of procedural effect, means that the *simple change* in circumstances leads to the consequence of modification ("upon a showing of changed circumstances that necessitates modification" (*id.* § 610.5(a))); subsection (c) means that the *proposed modification* is required to serve the child's best interests ("modification is necessary to serve the child's best interests" (*id.* § 610.5(c))). According to the majority, when a simple change in circumstances occurs, a modification in parenting time is required. If, however, section 610.5 is given its proper effect, the change in circumstances itself leads to the proposed modification in subsection (a), and the court considers whether the proposed modification serves the child's best interests in subsection (c). Effectively, the majority cuts out of the equation the consideration of the modification as it relates to the child's best interests and focuses the consideration on whether the circumstances have changed.

¶ 77    Turning from the text of section 610.5 to the majority's interpretation, my colleagues misapply the canons of statutory construction in significant ways. First, the majority breaks subsection (a) into two parts, treating each sentence in subsection (a) as its own separate entity with differing purposes, rather than reading the two sentences together as part of the same provision. *Sandholm*, 2012 IL 111443, ¶ 41 (the provision should be read as a whole). The majority

also reads subsection (a) as distinct from subsection (c) instead of reading them, and the other subsections, together to create a unified and coherent purpose. *Id.* This fractured reading ignores the fundamental principle that the statute be read as a whole, its words and phrases considered with respect to other relevant provisions of the statute and not considering the words and phrases in isolation. *Id.* Significantly, subsection (c) includes an evidentiary standard, preponderance of the evidence, yet the second sentence of subsection (a) does not. The majority nevertheless interprets the second sentence to provide the simple-change evidentiary standard yet omits whether the simple change must be demonstrated by a preponderance of the evidence or by clear and convincing evidence.

¶ 78    Further, the majority fails to apply the definitions of the terms given in section 600 to the terms used in section 610.5 and fails to explain how it manages to make parenting time wholly independent from an allocation judgment or parenting plan. See *Robbins*, 177 Ill. 2d at 540 (defined terms must be construed according to the definitions provided in the statute). By failing to explain how parenting time is somehow pulled out of subsection (c) when it is necessarily folded into "allocation judgment" and "parenting plan," the majority's explanation is not cohesive. Moreover, the majority fails to account for the element of time: subsection (a) deals with time— the time within which to bring a request to modify—whereas subsection (c) deals with modification of the existing plan or judgment.

¶ 79    Moreover, a significant purpose of the Act is to provide certainty and promote stability for the child of the dissolved union. 750 ILCS 5/102(5)-(7) (West 2022). The majority's interpretation actually destabilizes the balance between bringing a petition to modify parenting time and proving such a petition—by conflating the pleading requirements with the evidentiary burden of proof, any standalone request to modify parenting time automatically advances to the determination of the child's best interests, with all that entails. This means interviews and assessments, expending

scarce parental resources—financial, emotional, and intellectual—on litigation, and the tilting of the playing field to the well-heeled, litigious-minded parent who wishes to use this process as a cudgel to belabor his or her former partner. Such a result cannot be what the legislature intended, and it should not be how we interpret section 610.5. See *Wade*, 226 Ill. 2d at 510 (a court should reject a literal interpretation of the provision if it would lead to consequences neither foreseen nor intended by the legislature and should instead adopt a reasonable interpretation of the statutory language).

¶ 80    As I noted above, the majority, like respondent, fails to apply the definitions of the terms given in section 600 to the terms used in section 610.5. "Parenting time" is definitionally included within "parenting plan" and "allocation judgment." 750 ILCS 5/600(b), (d) (West 2022). By failing to explain how the legislature intended to remove parenting time from the defined terms even as it embedded it within the statutory meaning of those terms, the majority's explanation is neither cohesive nor persuasive.

¶ 81    This leads to a broader point with the majority's analysis: it reads and analyzes the words, but the words are taken out of the context of the purpose and meaning of the provisions at issue. Thus, the analysis of simple change versus substantial change is properly done, but only insofar as it pertains to the use of "change" as if simple change and substantial change were directly juxtaposed. This "not seeing the forest for the trees" mindset leads my colleagues into their error. According to the majority, the "follow-on change in the law in 2017 [was intended] to allow modifications of 'parenting time' unfettered timing ('at any time' (750 ILCS 5/610.5(a) (West 2022))) and with a less onerous burden of proof ('changed circumstances' (*id.*))." *Supra* ¶ 53. First, the leap from timing to burden of proof makes no sense in the context of the provision. As noted above, subsection (a) deals with the timing and requirements of a request to modify; subsection (c) *expressly* includes the burden of proof, preponderance of evidence. To claim that the legislature

intended to make a wholesale change in the burden of proof in the provision relating to timing instead of the existing provision specifically relating to the burden of proof is nonsensical. *Lakewood Nursing*, 2019 IL 124019, ¶ 17 (we presume that the legislature did not intend an absurd or nonsensical result in enacting a statute). More importantly, however, in what sense does the majority mean that "changed circumstances" *is* a burden of proof?

¶ 82    "Burden of proof" refers to the "quantum and qualify of proof" a party must present to prevail. *People v. Morgan*, 2025 IL 130626, ¶ 39. The concept of "burden of proof" encompasses both the burden of production, meaning the obligation to present enough evidence to satisfy a court that an alleged fact exists, and the burden of persuasion, meaning the obligation of convincing the trier of fact that the alleged fact is true. *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 462 (1983). The burden of proof is generally expressed to be by a preponderance of the evidence, by clear and convincing evidence, or beyond a reasonable doubt. *In re D.T.*, 212 Ill. 2d 347, 361-62 (2004). I have never seen a burden of proof expressed as a "change in circumstances," substantial or otherwise. For my colleagues to hold that the 2017 amendment to subsection (a) included an "less onerous burden of proof" and to denominate that burden of proof to be " 'changed circumstances' " is unreasonable and absurd.

¶ 83    Instead, it is clear that "changed circumstances" is a factual issue to be determined. As stated above, then, "changed circumstances" is the alleged fact that must be shown to the court to exist with a sufficient quantum of evidence, and then the court, sitting as trier of fact, must be convinced that it is true by some standard—preponderance or clear and convincing. As discussed below in more detail, the 2016 and 2017 amendments *did* change the burden of proof: the standard changed from clear and convincing (750 ILCS 5/610(b) (West 2014)) to preponderance (750 ILCS 5/610.5(c) (West 2022)). In short, change in circumstances—simple or substantial—is a factual

matter to be proved to a particular burden of proof and not, as the majority holds, a burden of proof unto itself.

¶ 84    Thus, the change in circumstances is properly seen to be a factual allegation—an element. However, looking solely at "changed circumstances" is only half of the requirement. The changed circumstances must "necessitate[ ]" a "modification to serve the best interests of the child." *Id.* § 610.5(a). The change in circumstances must therefore be related to the child's interests in some fashion, not simply be in the vein of one parent making a bit more money to justify an increase in parenting time.

¶ 85    My colleagues, continuing to echo respondent, do not account for "necessitates modification" in their analysis. Effectively, they write "necessitates modification" out of subsection (a), and this they cannot do. *Lakewood Nursing*, 2019 IL 124019, ¶ 17 (every word, clause, and sentence of a statute must be given a reasonable meaning). "Necessitates modification" modifies "changed circumstances" and, thus, must be read in such fashion, and this serves to alleviate the majority's concern that the 2017 amendment that added "changed circumstances" to subsection (a) somehow meant that the legislature was abandoning the longstanding requirement of "substantial change in circumstances" that must be proved at a hearing.

¶ 86    This point is further underscored in a case discussing proper interpretation of subsection (e) (concerning minor modifications to parenting time). *In re Marriage of O'Hare*, 2017 IL App (4th) 170091. There, the respondent contended that the trial court had misinterpreted "minor modification" because it was ambiguous. *Id.* ¶ 27. Using only the plain language of the Act, the court disagreed. *Id.* The court emphasized that the provision must be read as a whole. *Id.* ¶ 28. The court held that, with the exception of subsection (e) a party seeking a modification to parenting time "must still show a substantial change in circumstances," because the statute "evinces a desire to maintain continuity in parenting plans," a longstanding policy choice endorsed in many

decisions. *Id. O'Hare* underscores the importance of proper interpretation of the entirety of the statute while keeping an eye toward the ends the legislature sought to advance.

¶ 87 Finally, I note that, structurally, it makes more sense that, if the legislature intended to treat a hearing on a motion to modify parenting time separate and apart from a hearing on a motion to modify an allocation judgment, it would have placed the second sentence of subsection (a) into subsection (c) to highlight the fact it intended a modification of parenting time to be allowed only on a simple change in circumstances instead of the substantial change actually specified. 750 ILCS 5/610.5(a), (c) (West 2022). Thus, I conclude that the majority fails to interpret the words in context and in relation to the whole, thus violating fundamental principles of statutory construction. *Sandholm*, 2012 IL 111443, ¶ 41.

¶ 88 I also point out that the majority falsely deploys the fig leaf of judicial humility and declines to consider whether a request to modify an allocation judgment including modification of parenting time would need to show a simple or substantial change in circumstances. *Supra* ¶ 33 n.3. Simple logic dictates that, if the simple-change standard applies to stand-alone requests to modify parenting time, it must also apply to requests to modify parenting time embedded in requests to modify the allocation judgment because, according to the majority, parenting time has been pulled out and set apart from the allocation judgment in subsection (a). This, of course, injects chaos into any hearing that includes a request to modify parenting time and any other request, as the court will be required to decide simultaneously whether there has been a simple change and a substantial change in circumstances—a result the legislature could not reasonably have intended. See *Wade*, 226 Ill. 2d at 510 (a court should reject an interpretation of the statute that leads to consequences neither foreseen nor intended by the legislature). The majority's coy reluctance to follow its own logic serves only to illustrate the fundamental illogic of its decision and masks the mischief that will inevitably result from it.

¶ 89     My colleagues attempt to distinguish *In re Marriage of Trapkus*, 2022 IL App (3d) 190631, ¶ 24, claiming it used extrinsic aids to construe section 610.5(c) by reviewing "the evolution of the modification statutes" to determine whether a party must prove a substantial change in circumstances at a hearing on a request to modify parenting time.[6] *Trapkus* properly held that subsection (a) retained its gatekeeping function even though it had been amended with the addition of the second sentence devoted to a stand-alone motion to modify parenting time. *Id.* ¶ 27. My colleagues part ways with *Trapkus*, because, in their view, the amendment to subsection (a) changed its "*sole* function [from] gatekeeping requests to modify within two years" (emphasis in original) (*supra* ¶ 43), to include "the burden of proof regarding requests to modify parenting time" (*supra* ¶ 33). As explained above, the addition of the second sentence in subsection (a) did not add a burden of proof to the procedural or gatekeeping function of subsection (a), rather, it filled in any hole that existed when the first sentence of subsection (a) excluded requests to modify parenting time from the general two-year time limit, and yet the newly amended version did not specifically account for a stand-alone request to modify parenting time. *Trapkus*, whether it properly resorted to extrinsic aids of statutory construction, correctly reached the right result. Therefore, it should be followed.

¶ 90     My colleagues rely on *In re Marriage of Salbi*, 2024 IL App (2d) 240322-U, and *Erik S. v. Hollie S.*, 2025 IL App (4th) 241337-U, both of which reject *Trapkus*. *Erik S.* flat out mischaracterizes section 610.5 of the act, stating: "Subsection (a) provides: Parenting time may be modified at any time *** ."; "Subsection (c) governs the modification of parental decision making or parental responsibilities."; and "subsection (e) governs a modification of parenting time without

---

[6]I deal with the propriety of extrinsic aids below when I discuss ambiguity, and I consider its continuing value as authority when I discuss *stare decisis*.

a showing of changed circumstances [pursuant to specific enumerated factors].” (Internal quotation marks omitted.) *Id.* ¶ 70. Thus, *Erik S.* wholly ignores the first sentence of subsection (a), limits subsection (c) to parental decision-making or parental responsibilities when subsection (c) discusses when a court shall modify a parenting plan or allocation judgment, and limits subsection (e) to parenting time when it, too, discusses the modification of a parenting plan or allocation judgment. *Id.* By creating a straw man conception of section 610.5 of the Act through misstating its subjects and purposes, *Erik S.* proves to be flawed and unpersuasive.

¶ 91    *Salbi*, of course, provided the trial run for the majority’s holding here. I initially note that, in *Salbi*, the appellee did not provide a brief, and the case was decided without the assistance of a strong analysis of the entirety of section 610.5. *Salbi*, 2024 IL App (2d) 240322-U, ¶ 62. The majority takes advantage of the parties’ briefing here to elaborate on *Salbi*’s reasoning, but the central fact remains: *Salbi* is based on a misconception of the structure and form of section 610.5, leading to a misconstruction of the legislative intent. My colleagues are correct that unreported cases may now be expressly considered for their persuasive purposes. Where, however, the unreported cases employ flawed reasoning, their reasoning should not be followed.

¶ 92    I also highlight that both *Erik S.* and *Salbi* failed to consider, let alone explain and account for, the section 600 definitions of parenting time, parenting plan, parental responsibilities, and allocation judgment while refusing to follow *Trapkus*, which did properly use the principle of construing defined terms according to the definitions provided in the statute. *Robbins*, 177 Ill. 2d at 540. *Trapkus* expressly noted that “the modification of a ‘parenting plan’ referenced in subsection (c) continued to include written agreements that allocated parenting time,” citing the definitions from section 600 of the Act. *Trapkus*, 2022 IL App (3d) 190631, ¶ 28 (citing 750 ILCS 5/600(f), 610.5(c) (West 2016)). *Erik S.* rejected *Trapkus* in a two-paragraph analysis focusing on subsection (a) and the meaning of “changed circumstances.” *Erik S.*, 2025 IL App (4th) 241337-

U, ¶¶ 70-71. Likewise, *Salbi* focused on subsection (a) and did not consider the definitions of the terms employed in subsection (a), focusing instead on changed circumstances. *Salbi*, 2024 IL App (2d) 240322-U, ¶ 70. *Salbi* rejected *Trapkus* for using extrinsic aids in construction while ignoring the fundamental requirements that defined terms be construed according to their statutory definitions. *Id.* ¶ 71. Interestingly, all three cases employed the principle that, had the legislature intended a change, it would have said so. *Trapkus*, 2022 IL App (3d) 190631, ¶ 28 ("If the General Assembly had intended to create a new legal standard in subsection (a) for deciding parenting-time modification requests, it would have had to amend subsection (c)."); *Erik S.*, 2025 IL App (4th) 241337-U, ¶ 71 ("If the legislature intended for the changed circumstances to be 'substantial,' it would have said so."); *Salbi*, 2024 IL App (2d) 240322-U, ¶ 70 ("Had the legislature intended the change to be 'substantial,' it could have easily inserted such language in the second sentence of section 610.5(a)."). If the legislature *had* intended to change the evidentiary burden pertaining to factual issue of changed circumstances to be decided in the hearing on a request to modify, would it have placed it in the subsection governing timing or the subsection governing the hearing? This rhetorical question answers itself: the natural fit would be subsection (c), and *Trapkus* correctly employed the principle. Even more interestingly, the failures of *Erik S.* and *Salbi* to remotely consider that effect of the definitions of "parenting time," "parenting plan," and "allocation judgment" on the construction of section 610.5 significantly undercut their analyses and call into question their efforts at analyzing the legislative intent of section 610.5.

¶ 93     I last note that my colleagues suggest that the legislative purpose behind the second sentence of subsection (a) was to make sure "that changing a pick-up time should not be as difficult as changing parental decision-making or a parenting plan." *Supra* ¶ 53. Of course, at issue here is not simply a change in pick-up time from 3:30 p.m. to 3 p.m.; it is a significant increase in respondent's parenting time with the children. I take issue with the dismissive trivialization of the

interests at stake in this case as somehow making my colleagues' misconstruction of section 610.5 more palatable. Were respondent's request to modify nothing more than a request to change the pick-up time for his children, I note that subsection (e)(2) provides an expedient and streamlined method to cover such a request. See 750 ILCS 5/610.5(e)(2) (West 2022) (allowing the court to modify the parenting plan or allocation without a showing of changed circumstances if "the modification constitutes a minor modification in the parenting plan or allocation judgment"). The majority's concern is an illusory bugaboo, so phrased as to stampede the reader into panicked agreement with its misreading of subsection 610.5.

¶ 94    For the foregoing reasons, I would interpret subsection (a) to present the requirements for a stand-alone request to modify parenting time and subsection (c) to present the burden of proof and evidentiary standard to be employed by the court when adjudicating such a request, and I would affirm the trial court's judgment in this regard.

¶ 95                    III. Construction of an Ambiguous Statute

¶ 96    While I disagree with my colleague's analysis above, it can be seen to be a reasonable and good-faith effort to construe section 610.5 of the Act. Likewise, while they disagree with my analysis, it is a reasonable and good-faith effort to construe section 610.5 of the Act. This is the very definition of ambiguity: " 'A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways.' " *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009) (quoting *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003)).[7]

---

[7]I acknowledge that simply because we may say it is so does not make it so. I maintain that section 610.5 is clear and unambiguous, but an argument may be made that our radically differing interpretations reveal an inherent ambiguity in section 610.5 that may be resolved through resort to extrinsic aids of statutory construction.

It is therefore appropriate to resort to other aids of construction to discern the legislature's intent. *Id.*

¶ 97   Because section 610.5 of the Act can be understood in at least two different ways, *Trapkus*'s consideration of the "evolution of the modification statutes" to inform its construction thus becomes appropriate. *Trapkus*, 2022 IL App (3d) 190631, ¶ 24. The conclusion that subsection (a) is the procedural gateway to the subsection (c) hearing, requiring that the moving party prove a substantial change in circumstances before his or her request will be granted, is thus appropriately based on the consideration of how the statute was changed and, as reported authority, should continue to be followed instead of distinguished. *Id.* ¶¶ 27-28 ("There is nothing in the amended version of section 610.5 to indicate that the General Assembly sought to alter the [*Department of Public Aid ex rel. Davis v. Brewer*, 183 Ill. 2d 540, 554-56 (1998)] interpretation of subsection (a) as a gateway to an evidentiary hearing." "If the General Assembly had intended to create a new legal standard in subsection (a) for deciding parenting-time modification requests, it would have had to amend subsection (c).").

¶ 98   My colleagues commendably consider the legislative history and purposes in case section 610.5 be deemed ambiguous. *Supra* ¶¶ 46-53. I note first that, in the 2016 initial amendment, the new section 610.5 "is apparently codifying the old requirements for modification of custody and visitation, but using the new terms 'Allocation of Parental Responsibility' and 'Parenting Plan.' " William J. Scott & Robin R. Miller, *The New Illinois Marriage and Dissolution of Marriage Act: An Overview*, DCBA Brief: J. DuPage Cnty. Bar Ass'n, Dec. 2015, at 10, 15, https://cdn.ymaws .com/www.dcba.org/resource/resmgr/brief_pdf/brief_dec2015.pdf     [https://perma.cc/C6QT-D7X4]. The initial 2016 amendment thus apparently sought to preserve the existing regime with subsection (a) providing the procedural requirements for a request to modify, among other things,

parenting time and subsection (c) providing the burden of proof and evidentiary standards for any request that proceeded to a hearing, just as *Trapkus*, 2022 IL App (3d) 190631, ¶¶ 27-28.

¶ 99   Before the 2016 amendment, section 610 addressed modification of parental responsibilities. *E.g.*, 750 ILCS 5/610 (West 2014). Subsection (a) provided the procedural gatekeeping requirement that "no motion to modify a custody judgment may be made earlier than 2 years after its date, unless *** there is reason to believe [(supported by affidavit)] the child's present environment may endanger seriously his physical, mental, moral or emotional health." *Id.* § 610(a). Subsection (b) provided the guidelines for the hearing on a motion to modify a custody judgment: the trial court "shall not modify a prior custody judgment unless it finds by clear and convincing evidence, *** that a [simple] change [in circumstances] has occurred." *Id.* § 610(b).

¶ 100  The initial 2016 amendment repealed section 610 and replaced it with section 610.5, updating the previous subsection (a) with the new terminology: "no motion to modify an order allocating parental responsibilities may be made earlier than 2 years after its date, unless *** there is reason to believe [(supported by affidavit)] the child's present environment may [seriously] endanger [the child]." 750 ILCS 5/610.5(a) (West Supp. 2015). The hearing requirements of the former subsection (b) were substantially changed and placed into subsection (c): the trial court "shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that *** a substantial change [in circumstances] has occurred *** and that a modification is necessary to serve the child's best interests." *Id.* § 610.5(c).

¶ 101  The initial amendment did not substantively change subsection (a). However, the initial amendment to subsection (c) flipped the default from no change to a custody arrangement unless certain conditions were met to a required change in the parenting plan or allocation judgment if certain conditions were met. It also changed the evidentiary threshold from simple change in

circumstances to a substantial change in circumstances, and the burden of proof was reduced from clear and convincing evidence to a preponderance of the evidence.

¶ 102   Subsection (a) was thereafter amended to its current version. Pub. Act 99-763, § 5 (eff. Jan. 1, 2017) (amending 750 ILCS 5/610.5(a)). The first sentence was amended to except parenting time from the two-year limitation period: "no motion to modify an order allocating parental decision-making responsibilities, *not including parenting time*, may be made earlier than 2 years after its date, unless *** there is reason to believe [(supported by affidavit)] the child's present environment may [seriously] endanger [him or her]." (Emphasis added.) 750 ILCS 610.5(a) (West 2022). The gatekeeping function was kept intact in this amendment, and parenting time was excepted from the two-year limitation. To account for parenting time within the gatekeeping function, the 2017 amendment added the second sentence to subsection (a): "Parenting time may be modified at any time, without a showing of serious endangerment, upon a showing of changed circumstances that necessitates modification to serve the best interests of the child." *Id.* The second sentence does not add a new requirement for the hearing on a motion to modify parenting time; rather, it plugs the hole left by excepting parenting time from the two-year limitation on a request to modify, and it provides what must be shown in such a request: the party must plead a change in circumstances that requires a modification in parenting time to serve the child's best interests. *Id.* In other words, the change to subsection (a) is entirely organic and limited to that subsection—it did not engraft a new requirement to the hearing governed by subsection (c) (which itself was changed in the original 2016 amendment and left unchanged in the 2017 amendment). As *Trapkus* aptly observed, "[i]f the General Assembly had intended to create a new legal standard in subsection (a) for deciding parenting-time modification requests, it would have had to amend subsection (c)" to accomplish that change. *Trapkus*, 2022 IL App (3d) 190631, ¶ 28.

¶ 103   I also note that, at the time the Act and, particularly, section 610.5, were being amended in 2016, so too were the rules of our supreme court. Article IX of the Illinois Supreme Court rules (Ill. S. Ct. Rs. Art. IX) was amended to emphasize the need for expeditious resolution of matters impinging upon children of dissolved and dissolving marriages. Recognizing the new amendments, our supreme court hybridized the terminology used, keeping the old terms of visitation, custody, and removal, and adding the current terms of parental responsibilities, parenting time, and relocation to persist side-by-side in Rule 900. Ill. S. Ct. R. 900, Committee Comments (rev. Mar. 8, 2016). Despite the persistence of the old, superseded terminology, a reading of the article IX rules demonstrates that they do not carve out parenting time and set it on its own pedestal. All proceedings affecting children are covered together in the article IX rules, and our supreme court's intent to expedite these proceedings is manifest. Ill. S. Ct. R. 900(a) (eff. Mar. 8, 2016) ("The purpose of this article (Rules 900 *et seq.*) is to expedite cases affecting the custody or allocation of parental responsibilities of a child, to ensure the coordination of custody or allocation of parental responsibilities matters filed under different statutory Acts, and to focus child custody or allocation of parental responsibilities proceedings on the best interests of the child, while protecting the rights of other parties to the proceedings."). Thus, the point of the article IX rules is to make cases involving parental responsibilities, including modifications, run smoothly, efficiently, and expeditiously. Treating parenting time independently from parental responsibilities (see 750 ILCS 5/600(d) (West 2022) (" 'Parental responsibilities' means both parenting time and significant decision-making responsibilities with respect to a child.")) when it is definitionally included within the term can only hinder our supreme court's purpose.

¶ 104   My colleagues assert that the current version of subsection (a) "carefully carved [parenting time] out of the gatekeeping process required for attempts to modify allocations of parental decision-making responsibilities within two years," yet added, *to the gatekeeping provision*, a

sentence that "explicitly allow[ed] parenting time to be modified *at any time* and with only a simple change in circumstances" that governs the hearing on the stand-alone request to modify parenting time. (Emphasis in original.) *Supra* ¶ 52. This view injects absurdity and confusion into what is otherwise clear and, frankly, unambiguous. See *Lakewood Nursing*, 2019 IL 124019, ¶ 17 (in construing a statute, we presume the legislature did not intend absurdity or inconvenience). The second sentence of subsection (a) accounts for the exception added to the first sentence. No more, no less. Subsection (a), viewed from its historical evolution, does not support the reading my colleagues ascribe to it.

¶ 105    Properly construed, subsection (a) allows a stand-alone request to modify parenting time to be made at any time, within or without the two-year limitation period, subject to the requirement that such a request must indicate that there has been a simple change in circumstances and the modification serves the child's best interests. Like the first sentence, the second sentence also contains what must be pleaded in a request to modify and sets the time limits for doing so. The hearing continues to be governed by subsection (c), which changed the default position from shall not modify to shall modify, changed what needed to be shown from simple change to substantial change, but also lowered the standard of proof from clear and convincing evidence to a preponderance of the evidence. My colleagues misconceive the import and effect of the historical evolution of section 610 to section 610.5, and their resort to this aid in construction is therefore flawed, leading to an incorrect interpretation.

¶ 106                                    IV. *Stare Decisis*

¶ 107    I close with a consideration of *stare decisis*. "The doctrine of *stare decisis* is the means by which courts ensure that the law will not merely change erratically but will develop in a principled, intelligent fashion." *St. Paul Fire & Marine Insurance Co. v. City of Waukegan*, 2017 IL App (2d) 160381, ¶ 29. The hierarchical structure of our courts means that we, as a court, are bound to

follow the decisions of our supreme court, but we are not required to follow the decisions of equal or inferior courts. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). With that said, we should be cautious in dispensing with the reasoning of prior decisions, even of coordinate courts that we are not bound to follow, and absent compelling reasons for doing so, we should be reluctant to abandon settled decisions in favor of a novel, unsupported rule that captures the fancy of a majority of the panel. *St. Paul Fire*, 2017 IL App (2d) 160381, ¶ 29. "At its best, [the doctrine of *stare decisis*] is a call for judicial humility. It is a reminder to afford careful consideration to the work of our forbearers, their experience, and their wisdom." *Brown v. Davenport*, 596 U.S. 118, 141 (2022).

¶ 108   In this case, despite the relatively recent changes to the Act, there is still a small but important body of authority that we should consider and on which we should rely under the principles of *stare decisis*. Foremost is *Trapkus*, which considered the precise issue confronting us, and the analysis of which the majority imperfectly distinguishes. This court also decided *In re Marriage of Burns*, 2019 IL App (2d) 180715, ¶ 26, which held that the trial court "has the authority to modify a parenting plan or allocation judgment pursuant to section 610.5(c) of the Act if (1) a substantial change has occurred since the existing parenting plan or allocation judgment was entered and (2) the modification is necessary to serve the child's best interests." This is exactly what the plain language of section 610.5 of the Act requires and is also the result of the historical evolution of the modification provision reveals. My colleagues dismiss *Burns* because the court in that case was not required to decide the standard applicable to a stand-alone request to modify parenting time. *Supra* ¶ 55. Notwithstanding the precise issue, *Burns* applied the correct standard and is due some measure of consideration for enunciating the proper standard to apply to a hearing to modify a parenting plan or allocation judgment, which, as my colleagues and I note, includes parenting time.

¶ 109   In addition to *Trapkus* and *Burns*, there are several unreported cases that employ the same analysis as I used here. In *In re Marriage of Heaver*, 2025 IL App (2d) 250021-U, this court endorsed the substantial-change standard applied in the trial court. We noted that subsection (c) provided the framework for the trial court to conduct its hearing (*id.* ¶ 17), and we held that the petitioner had proved both a substantial change in circumstances and the other necessary allegations in his request to modify (*id.* ¶¶ 20, 26).

¶ 110   In *In re Marriage of Gill*, 2025 IL App (5th) 240890-U, ¶¶ 26-28, the court considered the mother's argument that the father had failed to prove by a preponderance of the evidence that a substantial change in circumstances occurred sufficient to justify changing the majority of the scheduled parenting time from the mother to the father. The court deemed that section 610.5(a) allowed a motion to modify parenting time that showed both changed circumstances and the necessity of modification to serve the child's best interests. *Id.* ¶ 27. Section 610.5(c) dealt with the resolution of the motion to modify parenting time by setting up a two-step process: the trial court must first determine whether the moving party established, by a preponderance of the evidence, that a substantial change in circumstances had occurred based on facts that had arisen since the entry of the existing parenting plan, and, if so, whether modifying the existing plan would be in the child's best interests. *Id.* ¶ 28. Thus, *Gill* treated subsection (a) as the gateway to the evidentiary hearing, for which the evidentiary burden of proof was provided in subsection (c).

¶ 111   In *In re Marriage of Mark O.*, 2024 IL App (4th) 230875-U, ¶¶ 16-20, the respondent argued that the trial court did not make the proper findings pursuant to section 610.5(a). She argued that the petitioner was required to plead and the court to find that the child was seriously endangered in his environment before the parenting plan could be modified. *Id.* ¶ 16. The court determined that the motion to modify had been filed after the two-year time limit, and therefore, there was no requirement for the petitioner to plead, or the court to find, serious endangerment to

the child. *Id.* ¶ 18. The court also noted that the Act deemed allocation of parenting time and allocation of parental decision-making responsibilities to be "two independent things," with the allocation of parenting time never being subject to the two-year requirement of subsection (a). *Id.* ¶ 19. *Mark O.* thus treated subsection (a) as setting forth solely the timing and pleading requirements of a petition to modify, not the substantive requirements necessary to prevail at a hearing.[8]

¶ 112   In *In re Marriage of Bastian*, 2023 IL App (3d) 220163-U, ¶ 9, the respondent filed a motion to modify parenting time. The petitioner appealed the trial court's denial of her motion to dismiss the motion to modify for failure to state a claim. *Id.* ¶ 24. The appellate court held that the respondent had satisfied the pleading requirements for the motion to modify by alleging changed circumstances. *Id.* ¶¶ 26-27. The appellate court also held that the hearing was properly conducted under section 610.5(c) and that the trial court's determination under subsection (c) was not against the manifest weight of the evidence. *Id.* ¶¶ 29-31.

¶ 113   In *In re Parentage of D.R.B.*, 2023 IL App (1st) 221074-U, ¶ 59, the court fully endorsed the substantial-change standard: "[p]arenting time may be modified upon a showing that a substantial change has occurred" in the child's or parents' circumstances. After a showing has been made at the hearing, the court is to allocate parenting time according to the child's best interests. *Id.*

---

[8]I note that *Salbi*, 2024 IL App (2d) 240322-U, ¶ 70, relied on *Mark O.* for the proposition that the allocation of decision-making responsibilities and the allocation of parenting time are distinct and independent, but *Salbi* failed to then consider the import of its placement in a subsection devoted to timing and pleading requirements. My colleagues retain the *Salbi* proposition without attribution and represent it to be a simple matter of plain-language interpretation. *Supra* ¶ 32.

¶ 114   In *In re Marriage of Robin L.*, 2022 IL App (4th) 220472-U, ¶ 13, the respondent argued that the trial court used the incorrect, simple-change standard of subsection (a), instead of the correct, substantial-change standard of subsection (c). The court analyzed the parties' arguments in which "the only position presented to and recognized by the [trial] court prior to the oral pronouncement of the decision was that there had to be a substantial change in circumstances before any modification could be ordered." *Id.* ¶ 15. The court held that the trial court used the proper subsection (c) standard of substantial change because it analyzed the evidence from the hearing pursuant to whether any of the changes presented had been anticipated, and it followed the law and did not apply a nonexistent legal standard. *Id.* ¶¶ 16-17.

¶ 115   These unreported cases reinforce the proper construction of section 610.5. In each, subsection (a) was deemed to cover the timing and requirements of a motion to modify parenting time, and subsection (c) governed what needed to be proved at the hearing.

¶ 116   *Stare decisis* also requires that I approach *Salbi* and *Erik S.* with the same caution and humility with which I approach *Trapkus*, *Burns*, and the unreported cases—giving careful consideration to the work of my colleagues, their experience, and their wisdom. *Brown*, 596 U.S. at 141. My colleagues essentially repeated and augmented *Salbi*'s analysis in this case, and I have discussed my disagreement. Likewise, *Erik S.* was based on a mischaracterized view of section 610.5, which undermines any value and guidance it could bring to the table. I believe I have adequately considered, in the proper light, *Salbi* and *Erik S.* and have provided adequate reasons for rejecting them, notwithstanding *stare decisis*.

¶ 117   I would affirm the trial court's judgment in all respects. Despite the challenges of this case, the court recognized that subsection (a) did not substantively govern the evidentiary standards and burden of proof at the hearing on respondent's stand-alone request to modify parenting time. For the foregoing reasons, therefore, I respectfully dissent.

*Reynolds v. Reynolds*, **2025 IL App (2d) 240028**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 16-FA-130; the Hon. Robert J. Zalud, Judge, presiding. |
| **Attorneys for Appellant:** | Randy K. Johnson, of West Dundee, for appellant. |
| **Attorneys for Appellee:** | Jamie R. Wombacher, of Law Offices of Lee & Wombacher, LLC, of Woodstock, for appellee. |